UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENODDA HICKS,

       Petitioner,

v.                                                                              Case Number: 08-cv-14070
                                                                       Honorable Denise Page Hood

BLAINE LAFLER,

       Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY AND LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

Petitioner Renodda Hicks, a state inmate currently incarcerated at the Mound Correctional Facility in Detroit, Michigan,[1] filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. On October 26, 2004, following a jury trial in the Monroe County, Michigan, circuit court, Petitioner was convicted of possession with intent to deliver 1,000 grams or more of cocaine, MICH.COMP.LAWS § 333.74012a(1). He was sentenced, as a habitual offender, second offense, MICH.COMP.LAWS § 769.10, to fifteen to thirty years in prison for that conviction. For

---

[1] Petitioner was incarcerated at the Carson City Correctional Facility, when he initially filed his habeas petition. However, he has since been transferred to the Mound Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

the reasons stated below, the Court will deny the petition. The Court will also decline to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

## I. BACKGROUND

This case arises out of an incident that occurred on February 12, 2004. The facts are as follows.

Cory Bammer, a supervisor with the United States Border Patrol, testified first. He said that he was on duty on the day in question, traveling in an unmarked car, when he noticed a vehicle with Texas license plates traveling below the speed limit. According to Mr. Bammer, pillows and blankets packed in the back seat of the vehicle made it appear as though individuals were huddled together inside. He said he slowed down to take a better look, thinking that illegal aliens might be in the car. Mr. Bammer testified that Petitioner appeared to slow down, but then sped away, cut across two lanes, and exited the interstate.

Mr. Bammer further testified that he and his partner, Edward McGinnis, who was in another unmarked car, followed the vehicle as it exited the freeway and drove the wrong way into a motel drive-through lane. They stopped the car and questioned the driver and his passenger. The driver was later identified as Petitioner. Finding that there were no illegal aliens in the car, they ceased their investigation. Mr. Bammer said he let Petitioner and his passenger park the car and go into their motel room. However, he said he maintained surveillance of the car because
he became suspicious when he questioned Petitioner and his passenger; they appeared nervous and gave conflicting answers.

2

According to Mr. Bammer's testimony, he then requested a local canine unit. He stayed on the vehicle, saw the dog perform the search, and later learned that a quantity of narcotics was recovered. It was later determined that Petitioner was not the owner of the vehicle.

Mr. McGinnis testified next. His testimony corroborated that of Mr. Bammer's. He did not interview any of the individuals involved.

Brett Ortolano, a lieutenant with the Monroe County Sheriff's Department, testified that he performed the search on the vehicle with his canine unit. Lieutenant Ortolano testified that the canine unit hit, which indicated the possible presence of narcotics in the rear of the vehicle. He said the keys to the vehicle were then obtained and a search was conducted. A rucksack was discovered which contained bricks of cocaine.

Dr. Jurgen Switalsi, a forensic scientist with the state police laboratory, testified that he tested two of the bricks, confirming the presence of cocaine; the weight was over 650 grams.

Officer Kenneth Dobbs testified that he labeled and weighed the narcotics.

Deputy Timothy George, the officer in charge of the case, assisted Lieutenant Ortolano in the canine search. He also obtained information as to what rooms the occupants were staying in, of which one of the occupants was Petitioner. Deputy George responded to the room; the keys to the vehicle were on the night stand. He stayed with the occupants of the room while the vehicle was searched. He later received the rucksack.

Detective Donald Vandercook interviewed Petitioner, after advising him of his rights. Detective Vandercook testified that Petitioner told him that he had been offered money to drive the vehicle from Texas to Detroit, and that he knew there were narcotics in the vehicle but did not know the amount.

Petitioner testified on his own behalf. He said that he had been employed by a trucking company, which was owned by Mr. Bolton. He testified that he had been making regular trips to the area as part of his job. He said he had been asked by Mr. Bolton to drive the vehicle to Detroit. He acknowledged that the registration to the motel room was in his name but said that he did not sign the registration card. Petitioner acknowledged that he had been advised of his rights but denied that he told the detective that there were narcotics in the car.

The jury found Petitioner guilty of the above-stated charge.

Following his sentencing, Petitioner filed a claim of appeal with the Michigan Court of Appeals, raising the following claim:

> I. [Petitioner] is entitled to a new trial where the trial court erred in denying the motion to suppress the results of the unconstitutional search.

On April 25, 2006, the Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's conviction. *People v. Hicks*, No. 259720, 2006 WL 1083914 (Mich.Ct.App. Apr. 25, 2006). Subsequently, Petitioner filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same claim. On September 26, 2006, the Michigan Supreme Court denied Petitioner's application because it was "not persuaded that the question presented should be reviewed by this Court." *People v. Hicks*, 477 Mich. 868, 721 N.W.2d 222 (2006).

Following, Petitioner filed a motion for relief from judgment in the trial court, raising the following claims: (1) that following a traffic stop in which he pulled into a hotel parking lot he was unlawfully detained by officers who were waiting for a drug sniffing dog to arrive, (2) that the prosecutor, at the close of his trial, vouched for the credibility of a witness, and (3) that his appellate counsel was ineffective. On July 27, 2007, the trial court denied Petitioner's motion

for relief from judgment. *People v. Hicks*, No. 04-33590-FC (Monroe County Circuit Court, July 27, 2007).

In September 2007, Petitioner filed a delayed application for leave to appeal that decision with the Michigan Court of Appeals, raising the same claims raise in his post-conviction motion. On January 24, 2008, the Michigan Court of Appeals denied Petitioner's delayed application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Hicks*, No. 280852 (Mich.Ct.App. Jan. 24, 2008). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was also denied because he "failed to meet the

burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Hicks*, 482 Mich. 893, 753 N.W.2d 199 (2008).

Subsequently, on September 22, 2008, Petitioner filed this habeas petition, raising the following claims:

    I.      [Petitioner] is entitled to a new trial where the trial court erred in denying the motion to suppress the result of the unconstitutional search.

    II.     [Petitioner] was denied his Sixth Amendment right to effective assistance of appellate counsel.

    III.    [Petitioner] asserts that the prosecutor, at the close of [his] trial, violated constitutional law by vouching for a state witness.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state-court decisions and states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

> adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## III. DISCUSSION

### A. Fourth Amendment Claim

In his first habeas claim, Petitioner alleges that he is entitled to a new trial because the trial court erred in denying his motion to suppress. Petitioner essentially alleges a violation of his rights under the Fourth Amendment. Petitioner raised this claim on direct appeal but the Michigan Court of Appeals rejected it, stating:

> Defendant argues on appeal that the trial court erred in denying his motion to suppress the evidence because the cocaine, and his subsequent arrest and

confession, derived from an illegal search of the vehicle he was driving. We disagree. We review the trial court's factual findings on a motion to suppress evidence for clear error. *People v Farrow*, 461 Mich. 202, 208-209; 600 N.W.2d 634 (1999). We review de novo the trial court's conclusions of law and ultimate decision on a motion to suppress evidence. *People v Garvin*, 235 Mich. App. 90, 96-97; 597 NW2d 194 (1999).

As an initial matter, the use of a drug-sniffing dog on a publicly parked vehicle does not constitute a search because the dog will not disclose non-contraband items in which an individual would have a privacy interest. *Illinois v Caballes*, 543 U.S. 405, 409-410; 125 S. Ct. 834; 160 L. Ed. 2d 842 (2005). However, if the use of a dog results from illegal conduct initiated by the police, any evidence obtained as a result of the dog's alert must be suppressed. *People v Clark*, 220 Mich App 240, 243; 559 N.W.2d 78 (1996).

In the instant case, police conduct leading to the dog's alert was not illegal. Border patrol agents spotted defendant driving his sport utility vehicle with Texas license plates ten miles below the speed limit in the middle lane of a major interstate. Pillows and blankets packed in the back of the vehicle made it appear as though individuals were huddled together inside, so the agents slowed to take a
better look. Defendant originally slowed with the agents, but he then sped away, cut across two lanes, and exited the interstate.

Defendant drove the wrong way through a motel drive-through lane, and one of the agents followed him and approached the vehicle on foot. The agent asked why they were in the area, and defendant and his passenger provided conflicting answers, appeared nervous, and changed the subject when the agent asked to search the car. Defendant and his passenger appeared relieved when the agent explained that he was looking for illegal aliens. The agent let defendant and his passenger park and go up to their room, but kept the vehicle under surveillance. The vehicle was parked in the motel parking lot when the agent called in a local deputy who walked the drug-sniffing dog around the outside of the vehicle. Because these actions were the product of a legally acquired suspicion, the use of the dog was not initiated through illegal police conduct. *Clark*, *supra*. Defendant further admits that the vehicle was parked and unoccupied. Therefore, defendant did not have a reasonable expectation of privacy in the parked vehicle, even though it was parked outside his motel room, *see People v Tate*, 134 Mich App 682, 688-689; 352 N.W.2d 297 (1984), and the use of the drug-sniffing dog was not a search. *Caballes*, *supra*.

Because the use of the dog was legal, the search of the vehicle was also legal. The automobile exception provides that police may search a vehicle

7

> without a warrant if they have probable cause to believe the vehicle contains contraband. *Pennsylvania v Labron*, 518 U.S. 938, 940; 116 S. Ct. 2485; 135 L. Ed. 2d 1031 (1996). If a properly trained dog indicates the presence of a controlled substance, that indication is sufficient to establish probable cause. *Clark*, *supra*. Here, a drug-sniffing dog, certified in narcotics patrol, indicated the presence of drugs in the vehicle, so police had probable cause to search, and no warrant was required.
>
> We also reject defendant's contention that it was improper for police to go up to his room and request the keys to the vehicle before searching it. *See People v Jenkins*, 472 Mich. 26, 33; 691 N.W.2d 759 (2005). Furthermore, defendant's temporary detention during the vehicle's search was appropriate, because police had probable cause that narcotics were hidden in the vehicle. *Michigan v Summers*, 452 U.S. 692, 702-703; 101 S. Ct. 2587; 69 L. Ed. 2d 340 (1981). Defendant's argument that police improperly obtained his confession is also premised on the illegality of the search, so it too fails. Finally, defendant's valid confession to police indicates that he knew about the cocaine and intended to sell it, establishing his constructive possession of the cocaine. *People v Wolfe*, 440 Mich. 508, 520-521; 489 N.W.2d 748, amended 441 Mich. 1201 (1992).

*Hicks*, No. 259720, 2006 WL 1083914, at * 1-2.

Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). *See also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.* at 482.

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If those two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court

8

deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72, 76 (6th Cir. 1986); *Markham v. Smith*, 10 Fed. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 217 Mich. 423, 186 N.W. 488 (1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See*, e.g., *People v. David*, 119 Mich.App. 289, 297, 326 N.W.2d 485, 488 (1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism had somehow broken down. *See*, e.g., *Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). Petitioner has not alleged any facts showing that the state's mechanism has broken down. Rather, it is clear that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. While the trial court may not have granted his motion to suppress, the trial court considered the motion. Petitioner also raised his claim on direct appeal and the Michigan Court of Appeals thoroughly addressed

the issue in its opinion.

The Court therefore concludes that the record here reveals that Petitioner had the opportunity to present his Fourth Amendment claims to the Michigan courts and that the claims were considered but rejected. While Petitioner may be disappointed with his inability to persuade the Michigan courts that his claims had merit, the record shows that he received all the process he was due. Because Michigan provided an opportunity for full and fair litigation of Petitioner's Fourth Amendment claims, this claim is not cognizable on habeas review. *Stone*, 428 U.S. at 482.

### B. Remaining Claims are Procedurally Defaulted

In his second habeas claim, Petitioner appears to allege that he was illegally detained before the dog sniff occurred. In his third habeas claim, Petitioner alleges that the prosecutor committed misconduct in closing argument by improperly vouching for a state witness. These claims are procedurally defaulted.

Federal habeas review is barred where a state court declined to address a prisoner's federal claims because the prisoner failed to meet state procedural requirements. In such cases, the state court judgment rests on independent and adequate state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

Here, Petitioner's second and third habeas claims are procedurally defaulted because Petitioner raised these claims for the first time in his motion for relief from judgment. The Michigan Court of Appeals denied his delayed application for leave to appeal, denying his motion for failure to establish grounds for relief pursuant to Mich.Ct.R. 6.508(D). Likewise, the Michigan Supreme Court denied Petitioner's application for leave to appeal because he failed to

meet his burden of establishing entitlement to relief under Mich.Ct.R. 6.508(D).

For a claim to be procedurally defaulted on the basis of a state procedural rule the petitioner must have violated a procedural rule and the state court must have also based its decision on the procedural default. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). If a state prisoner defaults his federal claims in state court in a decision based on an independent and adequate state procedural rule, those claims cannot be reviewed in a habeas proceeding. *Coe v. Bell*, 161 F.3d 320, 337 (6th Cir. 1998). In order for the procedural default doctrine to apply, the last state court rendering a judgment in the case must have based its judgment on the procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Here, the Michigan Court of Appeals and Michigan Supreme Court, the last state courts rendering a judgment in the case, based their decisions to deny Petitioner's applications for leave to appeal the trial court's denial of his motion for relief from judgment on Petitioner's failure to comply with Mich.Ct.R. 6.508(D). *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). While the judgments were brief, they were based on an independent and adequate state procedural rule: Petitioner's procedural default of failing to raise those claims in his appeal of right. Since the Michigan Court of Appeals and Michigan Supreme Court were the last state courts rendering judgments in this case, their decisions denying Petitioner's claims on the basis of a state procedural bar prevents federal habeas review. *Simpson*, 238 F.3d at 407 ("While the judgment [referencing Mich.Ct.R. 6.508(D)] was brief, it was based on an independent and adequate state procedural rule."); *see also Alexander v. Smith*, 311 Fed.App'x 875, at *6 (6th Cir. Feb. 20, 2009) (confirming that *Simpson* is binding precedent).

When a petitioner defaults on his "federal claims in state court pursuant to an

11

independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner has the burden of showing cause and prejudice to overcome a procedural default. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754).

Petitioner appears to argue cause—that his appellate attorney was ineffective—only with respect to his second claim. Because he does not appear to allege cause for his default with respect to his prosecutorial misconduct claim, and because he cannot meet the fundamental miscarriage of justice exception, federal habeas review of his third habeas claim is precluded.[2]

With respect to his second claim, attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland v. Washington*, 466 U.S. 668 (1984). To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must demonstrate that, considering all of the circumstances, counsel's performance fell below the objective standard of reasonableness and that a reasonable probability exists that, but for counsel's conduct, the result would have been different. *Strickland*, 466 U.S. at 669, 694.

---

[2]Even if Petitioner had argued ineffective assistance of appellate counsel with respect to his prosecutorial misconduct claim, he cannot show that counsel was constitutionally ineffective for failing to raise that claim because, as the trial court noted in its July 27,2007 decision, the underlying claim is without merit. And, any claim that Petitioner's rights under Michigan law were violated are not cognizable upon federal habeas review.

Judicial scrutiny of counsel's performance must be highly deferential. Courts presume that an attorney is competent and the burden rests upon the defendant to show a constitutional violation. *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995). A strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A petitioner must also overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. The *Strickland* Court cautioned that courts must take care to avoid second-guessing strategic decisions that did not prove successful. *Strickland*, 466 U.S. at 694.

The mere failure to raise a claim even if meritorious on appeal does not constitute ineffective assistance of appellate counsel sufficient to establish cause to excuse a procedural default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). It is well-established that appellate counsel is not required to raise every nonfrivolous issue. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Tactical decisions regarding issues on appeal "are properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1985). An accused does not have a constitutional right to have his counsel press nonfrivolous points requested by his client if counsel decides as a matter of professional judgment not to press these points. *Brown v. Foltz*, 763 F.2d 191, 194 n. 4 (6th Cir. 1985).

In *Smith v. Robbins*, 528 U.S. 259, 288 (2000), the United States Supreme Court stated:

> In *Jones v. Barnes*, 463 U.S. 745 [parallel citations omitted] (1983), we held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See*, e.g., *Gray v.*

13

> *Greer*, 800 F.2d 644, 646 (C.A. 7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")

*See also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000) (where claim was not "dead bang winner," Petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

In this case, the record reveals that Petitioner's appellate attorney raised a claim on direct appeal challenging the constitutionality of the search. Petitioner has failed demonstrate that the claim allegedly ignored by appellate counsel on direct appeal was clearly stronger than the claims presented and he has failed to overcome the strong presumption that his appellate counsel was competent. Since Petitioner has failed to establish cause for his procedural default, there is no need to determine whether Petitioner can meet the prejudice prong of the "cause and prejudice" test. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Long v. McKeen*, 722 F.2d 286, 288 (6th Cir. 1983). Petitioner also cannot show a fundamental miscarriage of justice. Because Petitioner has failed to meet his burden of establishing cause and prejudice for his procedural default, and
because he has failed to establish a showing of a fundamental miscarriage of justice, federal habeas review of his second claim is also precluded.

However, a petitioner may overcome a procedural default in the absence of "cause and prejudice" upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-315 (1995) and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). The fundamental miscarriage of justice exception applies in the extraordinary case where the habeas petitioner demonstrates that the alleged constitutional error probably resulted

14

in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. In other words, the petitioner must show "that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006). Petitioner has made no such showing here. He is therefore not entitled to habeas relief on these claims.

### C. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

Here, the Court concludes that jurists of reason would not find the Court's assessment of the constitutional claim or procedural ruling debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability. Nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Petitioner's petition for writ of habeas corpus [dkt. # 1] is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: June 24, 2010

I hereby certify that a copy of the foregoing document was served upon Renodda Hicks, Reg. No. 515629, Mound Correctional Facility, 17601 Mound Rd., Det., MI 48212 and counsel of record on June 24, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager